(OCTOBER TERM, 1919)

## STATE v. TRUE.

(No. 977; Decided Oct. 6th, 1919; 184 Pac. 229.)

COURTS—ORIGINAL JURISDICTION OF SUPREME COURT TO ISSUE WRITS OF PROHIBITION—STATE ENGINEER NOT AN INFERIOR COURT WITHIN THE MEANING OF THE CONSTITUTIONAL PROVISION RELATING TO WRITS OF PROHIBITION.

1. The original jurisdiction of the Supreme Court is conferred by the constitution, and it has only such power in cases originally brought before it, as is directly conferred by that instrument, or necessary to a full exercise of the powers conferred.

2. The Supreme Court has only such jurisdiction to issue the writ of prohibition and other writs as is directly conferred by the constitution, or necessary to a full exercise of the powers conferred.

3. Under the state constitution, Art. V, Secs. 2 and 3, prescribing the jurisdiction of the Supreme Court, and limiting its

power to issue writs of prohibition to its appellate or revisory jurisdiction except as enlarged by its "general superintending control over all inferior courts", the Supreme Court has not original jurisdiction to issue a writ of prohibition against the State Engineer to restrain him from holding a threatened hearing on petition to cancel a permit to construct a reservoir, under Comp. St. 1910, Secs. 743-752, the State Engineer not being an "inferior court" within the Constitution.

ORIGINAL PROCEEDINGS in prohibition by the State of Wyoming on the relation of John W. Leazenby against James B. True, State Engineer, to prevent defendant from conducting a hearing upon petition filed with him, to cancel a reservoir permit. Heard upon demurrer to the petition.

*W. L. Walls, Attorney General,* in support of the demurrer.

This is an original proceeding for the writ of prohibition to prevent action by the State Engineer in conducting a hearing upon an application for the cancellation of a reservoir permit. The State Engineer set the matter for hearing, but prior to the date assigned for hearing, the plaintiff applied to this court for a writ of prohibition to prevent action on the ground that the Engineer is without jurisdiction to conduct such a hearing; the State Board of Control acts in an administrative and quasi-judicial capacity (Inv. Co. v. Carpenter, 9 Wyo. 110); the State Engineer has general supervision of the waters of the state (Const. Art. VIII, Sec. 5); the State Engineer has authority to approve, disapprove or cancel water permits, his action being subject to review by the courts (Sec. 728-737 C. S.); his authority with reference to reservoir permits is defined by Secs. 743-748, and certain other sections mentioned and referred to therein; he has authority to cancel permits (Sec. 748 C. S.); he has authority to make all necessary orders to enforce an observance of the statutes as to applications for reservoir permits, or a compliance with the law thereafter; the courts cannot control the discretion of the State Engineer, as an administrative officer acting within his proper jurisdiction

(Inv. Co. v. Carpenter, *supra*) ; the relator has an adequate remedy at law by appeal to the courts (Sec. 733-748). The inconvenience and expense of an appeal will not justify the issuance of a writ of prohibition to prevent official action by the engineer.

*W. E. Mullen,* in support of the demurrer.

The Constitution, Art. V, Sec. 3, confers original jurisdiction upon this court for the issuance of writs of prohibition in aid of its appellate and revisory jurisdiction; in Dobson v. Westheimer, 5 Wyo. 34, it was held that the supervisory powers of the court over inferior tribunals authorized the issuance of writ of prohibition in any proper case where the remedy had been recognized by common law, if the act sought to be prohibited is of a judicial nature; in State v. District Court, 5 Wyo. 227, it was also held that the writ would lie only when the inferior court or tribunal exceeded its jurisdiction; in State v. Ausherman, 11 Wyo. 420, it was held that the writ might issue in any proper case. The State Engineer has general supervision of the waters of the state (Const., Art. VIII, Sec. 5). His powers comprehend administrative action (Inv. Co. v. Carpenter, 9 Wyo. 110); the Engineer is not an inferior court; he acts in a quasi-judicial capacity only; he may cancel, grant or refuse reservoir permits in proper cases (748 C. S.) ; he may do this without a hearing, and in doing so acts in his administrative capacity; his discretion may not be controlled by the writ of prohibition; the writ should be denied.

*Corthell, McCollough and Corthell,* opposing the demurrer.

This court has jurisdiction to restrain by prohibition the action of inferior courts in excess of their jurisdiction (State v. Ausherman, 11 Wyo. 410) ; the appropriate function of the remedy is to restrain the exercise of unauthorized judicial or quasi-judicial power (High Extraordinary Legal Remedies, 764 A., 32 Cyc. 601, 602, and cases cited; State v. Clendenning, — Ohio St. —, 112 N. E. 1029; State v. Young, 29 Minn. 474, 523; Osage & Okla. Co. v. Millard,

— Okla. —, 145 Pac. 797, 799; State v. Stevens, — Nev.
—, 116 Pac. 605; Baker v. Gooding County, — Ida. —,
138 Pac. 342, 345; State v. Toomey, 27 S. D. 37, 129 N. W.
563; State v. Selectmen of Norwood, 223 Mass. 222, 111
N. E. 851, 852); the controversy before the State Engineer
involves a substantial property right; successive appeals do
not afford an adequate remedy; the State Engineer acts in
a quasi-judicial capacity (Spear v. Stephenson, 102 Pac.
365); the nature of this power is exhaustively discussed in
.Sugar Co. v. Goodrich, 27 Ida. 26, 147 Pac. 1073; the
powers of the Engineer are statutory and do not include the
power to cancel water applications; his powers should be
strictly construed (Sutherland St. Con. 390); he cannot
impose a condition unauthorized by statute (Laughlin v.
Board, 21 Wyo. 99; the power of supervision of public
waters is administrative (Inv. Co. v. Carpenter, 9 Wyo.
110), and are statutory (Willey v. Decker, 11 Wyo. 496);
no power is delegated to determine questions of forfeiture or
abandonment (Parshall v. Cowper, 22 Wyo. 385; Prairie
Oil Co. v. Cruce, 147 Pac. 152, 36 Cyc. 1179); there can be
no forfeiture unless judicially determined (19 Cyc. 1559);
the proceedings are adversary and involve a judicial ques-
tion (State v. Carr, 28 N. E. 88).

BLYDENBURGH, JUSTICE.

This is a proceeding invoking the original jurisdiction of
this court to issue a writ of prohibition against the State
Engineer to restrain him from holding a threatened hearing
seeking to cancel a permit theretofore issued to construct a
reservoir to conserve and impound the waters of Harney
Creek in Albany County, Wyoming.

The relator alleges in his petition that on August 10, 1914,
one D. C. Buntin made and filed in the office of the State
Engineer an application for a permit to construct the Harney
Creek Reservoir in due form, under the provisions of Chap-
ter 59 (Sections 743-752), Wyoming Compiled Statutes,
1910, and the application is set out in full in the petition.
That the State Engineer then in office on the 25th day of

September, 1914, approved said application and endorsed thereto,

"The State of Wyoming,⎫
  State Engineer's Office. ⎬ ss.

"THIS IS TO CERTIFY THAT I have examined the foregoing application and do hereby grant the same subject to the following limitations and conditions:

"Primary Permit. Application for secondary permit describing lands to be irrigated to be filed prior to August 1st, 1915.

"Construction of proposed works shall begin within one year from date of approval.

"The time for completing the work shall terminate on December 31, 1919.

"WITNESS my hand this 25 day of September, A. D. 1914.
                        "A. J. PARSHALL,
                            "State Engineer."

And that on July 31st, 1915, the State Engineer made the following endorsement on said application:

"NOTICE of Commencement of Work recorded July 31, 1915. Time for filing secondary application extended to January 31, 1916. (See letter from D. C. Buntin, July 30, 1915.)                        "JAMES B. TRUE,
                "State Engineer, July 31, 1915."

That said Buntin on the 28th day of February, 1917, sold, assigned and transferred to the relator all his rights under said permit. That W. C. Thomas and John H. Davis, co-partners as Davis & Thomas, on April 24, 1918, filed an application in the office of the State Engineer for the cancellation of the relator's permit for the reasons that Buntin had failed to file his secondary application; had failed to begin the construction of the proposed work within one year from the date of approval of the application; that Davis & Thomas hold interest in the waters of Harney Creek which is greatly injured by having the Buntin application stand of record; had expended large sums of money in constructing the Columbus Reservoir; and accompanied

said application for cancellation by affidavits supporting the statements contained therein, all being set out in full in the petition. That on June 18, 1919, the State Engineer notified relator that a hearing would be had before the State Engineer for the purpose of hearing and determining the allegations contained in the application of Davis & Thomas to cancel his permit; that on June 24, 1919, Davis & Thomas, by their attorney, and the relator, by his attorney, appeared before the State Engineer and thereupon the relator objected and protested against the State Engineer holding said hearing on the ground that the State Engineer was without jurisdiction and authority to hold said hearing and had no power conferred upon him to hear and determine the cancellation of relator's permit, whereupon the State Engineer announced his decision and determination that he had jurisdiction to hear and determine the said matter and to cancel said permit and thereupon adjourned the said hearing until June 28, 1919. That relator's project is not of the character mentioned in sections 746 and 747 of the Wyoming Compiled Statutes, and was not in the opinion of the State Engineer such as to require the appointment of an assistant engineer or the supervision of said work, but was supervised and constructed by the relator himself and was completed by the relator prior to December 31, 1918, without supervision on the part of or under the authority of the State Engineer. Then follows the allegation that the State Engineer has no jurisdiction or authority to hold the hearing or cancel the permit and that he is usurping judicial or quasi-judicial power and that he intends and threatens to proceed further with said hearing and to take evidence concerning the compliance of the relator with the conditions of said permit, and to decide the question of the cancellation of the permit.

It is further alleged that the relator has no adequate remedy other than the writ of prohibition prayed for and that he has expended $3,600; that he needs all the water that can be stored in said reservoir for use in irrigating his lands underlying the same, and if the defendant is permitted to proceed with the hearing and to cancel said permit he will

be deprived of the use of such waters for an indefinite time during the hearings and determination of the matter before the State Engineer, the Board of 'Control and the various appeals to the courts, and will be compelled to produce and examine witnesses at great expense without any security or recourse for costs or expenses, and if his permit is cancelled he would be deprived of the right to proceed to apply the waters to beneficial use and to complete his appropriation of the public waters, whereby he would suffer great and irreparable injury. It is then stated that the real parties in interest are Davis & Thomas, the protestants upon whose application the proceedings before the defendant have been taken and conducted. Then follows the prayer for a writ of prohibition to issue to restrain the defendant, his successors in office, and all persons acting under or in aid of them, from further proceedings in the matter of the hearing pending this proceeding, and that upon a hearing in this proceeding such writ be made absolute; that the relator be restored to all his rights, &c. Upon the presentation of the petition an alternative writ of prohibition and an order to the State Engineer to show cause on July 26, 1919, why said writ should not be made absolute, was issued.

The defendant filed a demurrer to the petition, setting up: "First, That it does not appear from the petition of the plaintiff on file herein, that the plaintiff has any right to or cause for the writ of prohibition prayed for in his petition. Second, That the petition of the plaintiff on file herein does not set forth the facts sufficient to entitle the plaintiff to the relief prayed for or to any relief of any kind or character. Third, That the court has no jurisdiction of the subject matter or the subject of the action. Fourth, That the facts stated in the plaintiff's petition are not sufficient to constitute a cause of action."

The case was heard on the demurrer, the attorney for Davis & Thomas joining in the argument in behalf of the demurrer.

It was claimed on behalf of the defendant that he was an administrative officer and that the duties in relation to the

control and distribution of the waters of the state were of an administrative character; that under the provisions of Chapter 59, Wyoming Compiled Statutes, 1910, he was given the power to cancel any permit for non-compliance with any of the provisions of the chapter, and that the language "and the state engineer is hereby authorized to cancel any permit wherein the provisions of the above sections have not been, or are not being, complied with," contained in section 748, gives such authority, "the above sections" referring to all the preceding sections of the chapter; and the hearing contemplated in this case was merely for the purpose of ascertaining the facts upon which to exercise such administrative functions and therefore could not be reached by a writ of prohibition. That the statute provides for appeal to the Board of Control and from it to the District Court, and thence to this court, and the writ of prohibition cannot be used in place of an appeal proceeding or proceeding in error. "That the State Engineer is not an inferior court nor a tribunal of any kind whose executive acts in the line of his prescribed duties are subject to control by the writ of prohibition."

On the other hand, it is contended on behalf of the relator that the writ of prohibition is not only to restrain inferior courts or judicial tribunals, but also to restrain the exercise of judicial or quasi-judicial functions or power by administrative tribunals or administrative officers who attempt to usurp such powers without lawful authority. That the hearing proposed and the cancellation of the permit is a judicial proceeding and determination of property rights between adversaries, and of a judicial character. That no power is attempted to be given to the State Engineer to cancel such a permit as that of the relator. That section 748 and the language employed therein "above sections" refers to sections 746 and 747 solely as the sections mentioned in section 748, and to no other sections of the chapter. That if the law attempted to give to the State Engineer judicial power it would be unconstitutional. That the State Engineer had no power to impose the condition as to time for filing a

secondary permit, and it is therefore void. That this is a
proper case for a writ of prohibition and no other adequate
remedy exists.

We are, at the outset, confronted with a question of juris-
diction: Whether this court has original jurisdiction to issue
a writ of prohibition in a case of this kind against the State
Engineer. In the earlier cases in this court, where the
original jurisdiction of this court was invoked to issue writs
of prohibition it was contended that this court had power
to issue the writ only in cases coming here on proceedings
in the nature of appeal or proceedings in error (Dobson v.
Westheimer et al., 5 Wyo. 34, 36 Pac. 626; State ex rel.
Mau v. Ausherman, 11 Wyo. 410, 72 Pac. 200, 73 Pac.
548). But in those cases it was held that the original power
to issue the writ was not confined to cases which first reached
this court by appellant proceeding, but it was held that by
the provision of the constitution giving "general superin-
tending control over all inferior courts" this court was vested
with original jurisdiction in proper cases to issue writs of
prohibition to restrain the action of *inferior courts* in excess
of their jurisdiction. The original jurisdiction of this court
is conferred by the constitution and it has only such power
in cases originally brought here as is directly conferred
by that instrument or that are necessary to a full exercise
of the powers conferred (15 C. J. 730, 731, 1025; 7
R. C. L. 1030, 1072, 1076, 1077; 32 Cyc. 623). And
this applies to the writ of prohibition and other writs
(22 R. C. L. 26). The sections of the constitution applicable
are sections 2 and 3 of Article V, which are as follows:

"Sec. 2. The supreme court shall have general appellate
jurisdiction, co-extensive with the state, in both civil and
criminal causes, and shall have a general superintending con-
trol over all inferior courts, under such rules and regula-
tions as may be prescribed by law."

"Sec. 3. The supreme court shall have original jurisdic-
tion in quo warranto and mandamus as to all state officers,
and in habeas corpus. The supreme court shall also have
power to issue writs of mandamus, review, prohibition,

habeas corpus, certiorari, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of a person held in actual custody, and may make such writs returnable before himself or before the supreme court, or before any district court of the state or any judge thereof."

In the constitutions of a number of the states original jurisdiction is given the supreme court to issue writs generally without limitation and in such cases it is generally held that the writ of prohibition may issue to any inferior tribunal having judicial or quasi-judicial powers, whether called a court or not, and even in extreme cases to strictly administrative boards or officers who attempt to usurp judicial functions (22 R. C. L. 14, 15, 17; 32 Cyc. 601). But it was originally only directed to a court. It is defined by Blackstone as a writ "directed to the judge and parties of a suit in any inferior court, commanding them to cease from the prosecution thereof upon suggestion that either the cause originally or some collateral matter arising therein does not belong to that jurisdiction but to the cognizance of some other court" (3 Black 'Com. 112). But it will be noticed that the original power granted this court by the Wyoming Constitution is much more restricted than in the states referred to. The power to issue these prerogative writs is confined to its appellate and revisory jurisdiction, except as enlarged by its "general superintending control over all inferior *courts*". And as to state officers the original jurisdiction is limited to quo warranto and mandamus.

In Dobson v. Westheimer, *supra,* this court intimated at least that its original jurisdiction to issue the writ of prohibition was confined to inferior courts. Chief Justice Groesbeck, in the opinion in that case, said: "So it appears that either under the common law or by virtue of a statute the writ will not lie except to prevent the encroachment of jurisdiction by *courts,* or, at the farthest, bodies exercising quasi judicial functions." And State ex rel. Mau v. Ausherman

goes no further than to hold that under the power of "super-intending control" this court has original jurisdiction to issue the writ of prohibition to inferior courts, Judge Potter in the opinion in that case, after discussing this provision of the Constitution, saying: "We are of the opinion, there-fore, that this court is vested with jurisdiction in proper cases calling for its exercise to issue writs of prohibition to restrain the action of *inferior courts* in excess of their juris-diction."

It then remains to consider whether the writ of prohibi-tion asked for here is directed to one of the *inferior courts* of the state.

The State Engineer is a constitutional state officer en-dowed with certain administrative duties relating to the pub-lic waters of the state, but is nowhere therein mentioned as a court or given judicial functions and it would seem that a constitutional provision using the words "inferior courts" was intended to mean those *courts* mentioned or provided for in the constitution. But we are not without authority for the proper construction of this constitutional language. The constitution of South Carolina in this respect is as follows, Section 4 of Art. IV:

"The Supreme Court shall have appellate jurisdiction only in cases of chancery, and shall constitute a court for the correction of errors at law, under such regulations as the General Assembly may by law prescribe; provided, the said court shall always have power to issue writs of injunction, mandamus, quo warranto, habeas corpus, and such other original and remedial writs as may be necessary to give it a general supervisory control over all other courts in this state." This provision is substantially like the one in the Wyoming Constitution. In the case of State ex rel. Rich-land County v. Columbia, 16 S. C. 412, the Supreme Court of South Carolina said:

"It will thus be seen that this court has power to issue certain *specified* writs in *any* case where such a remedy may be appropriate (Wallace v. Hayne and Mackey, 8 S. C. 374), and that it also has power to issue such other original

and remedial writs as may be necessary to give it a general supervisory control over all other *courts* in the state. Accordingly, it has been held that when this court is asked to issue a writ which is not among those *specifically* named in the above cited section of the constitution, it must be made to appear that the writ is asked for to enable this court to exercise some supervisory control over some one of the *courts* of this State, as this court has no power to issue such a writ except to some one of the *courts* of this State for the purpose above indicated. * * * 'This unrestrained right, as to the writs specified, does not attach to "other original writs", in which that now sought is included. The very qualification which is annexed shows that the power is restricted, and that a more limited jurisdiction was intended.' * * * Whenever this court is asked to issue one of the writs not specifically mentioned in the above-cited section of the constitution, it is necessary to make it appear: 1. That the writ is to go to one of the *courts* of this State. 2. That such writ is demanded for the purpose of enabling this court to exercise some supervisory control over the *court* to which the writ is to be directed. * * * Hence, the first inquiry is whether the writ asked for is to go to one of the *courts* of this State; and, 2d, whether such writ is demanded for the purpose of enabling this court to exercise some supervisory control over the *court* to which it is to be directed. The body to which the writ is to be directed is the body in which the municipal authority of the city of Columbia is vested, called in the act incorporating said city, The mayor and aldermen of the City of Columbia, and the questions are: Whether that body is such a court as is contemplated by the constitution, and, if so, whether the writ is demanded for the purpose of enabling this court to exercise some supervisory control over such body acting in its judicial capacity?"

And upon rehearing of the jurisdictional question in 17 S. C. 80, where it was argued that "because the act sought to be restrained is an act of a judicial nature it must necessarily be regarded as the act of *a court,* and therefore this

court would have original jurisdiction to issue the writ", that court said:

"It does not follow, however, that a judicial act can only be performed by a court. There is no reason why the legislature may not entrust the performance of acts of a judicial nature to persons and bodies corporate who do not constitute one of the courts of the state; and it is the constant habit to do so. The legislature has at various times conferred upon clerks, sheriffs, and many other officers the power to perform judicial acts, in the sense that they involve the exercise of judgment and discretion; and we do not understand that it was ever supposed that such officers were thereby constituted courts. * * * There is necessarily involved in the idea of a court that of a tribunal empowered to hear and determine issues between parties, upon pleadings, either oral or written, and upon evidence to be adduced under well-defined and established rules, according to settled principles of law."

And in Hunter v. Moore, 39 S. C. 394, 17 S. E. 797, approving the decision in State v. Columbia, *supra,* the court said: "It was there conclusively determined that the Supreme Court, in the exercise of its original jurisdiction, has no authority to issue a writ of prohibition, unless it is directed to one of the courts of the State, for the purpose of enabling the Supreme Court to exercise a supervisory control over the court to which it is directed. * * * So that the only remaining question in this case is, whether the writ of prohibition asked for here is to be directed to one of the courts of the State for the purpose of keeping it within the limits of its jurisdiction. It seems to us too clear for argument that the town council of Yorkville is not one of the courts of the State referred to in section 4 of Article IV of the Constitution, though invested, it may be, with certain judicial powers for certain prescribed purposes."

So here it seems to us too clear for argument that the State Engineer is not one of the inferior courts of this State referred to in section 2 of Article V of the Constitution.

As to whether a court of general original jurisdiction, like our district courts, would have authority to issue a writ of prohibition against an administrative officer such as the State Engineer, when it is alleged that he has usurped judicial powers without authority of law, there seems to be some conflict of authority, and it is not necessary to decide in this case, and we do not decide. The questions raised by the parties in this case as stated herein are interesting and important, but as we hold that this court has no original jurisdiction to issue the writ of prohibition in a case of this character it becomes not only unnecessary but improper for us to consider or determine these questions in this case.

We hold that this court, under the Constitution, has no original jurisdiction to issue a writ of prohibition to the State Engineer, and therefore the demurrer will be sustained, the writ will be denied, the order to show cause quashed and the petition dismissed.

*Writ denied and petition dismissed.*

BEARD, C. J., and POTTER, J., concur.